**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ECL GROUP, LLC d/b/a EYE CARE LEADERS and ELI RESEARCH INDIA PRIVATE LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> SOURABH MOHARIL, AGILITE GLOBAL SOLUTIONS COMPANY, LLC, and MANAGED MARKETS INSIGHT AND TECHNOLOGY, LLC, <br><br> Defendants. | Civil Action No. <u>2:22-cv-057</u> <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs ECL Group, LLC d/b/a Eye Care Leaders ("Eye Care Leaders") and Eli Research India Private Limited ("Eli Research") (together, "Plaintiffs") file this Complaint against Sourabh Moharil ("Moharil"), Agilite Global Solutions Company, LLC ("Agilite"), and Managed Markets Insight and Technology, LLC ("MMIT") (together, "Defendants") as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(b)(1) and § 1836(c) in that Plaintiffs seek relief under the Federal Defend Trade Secrets Act.  The Court also has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 in that there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest or costs.

2.     Plaintiff Eye Care Leaders is a healthcare IT company that provides holistic solutions to the optometry and ophthalmologic specialties and is headquartered in Charlotte, North Carolina. Eye Care Leaders's sole member is The ECL Trust, a Delaware statutory trust. The Trustee of The ECL Trust is Hugh Steven Wilson, a citizen of California.

3.      Plaintiff Eli Research is a research and information company that provides publications, teleconference, and audio learning products to various industries including healthcare, education, human services, sales and customer service, and technology and is headquartered in Faridabad, India.

4.      Defendant Sourabh Moharil is a citizen, resident, and domiciliary of Pennsylvania.

5.      Defendant Agilite is a Pennsylvania limited liability company that consults in the healthcare industry by providing product-based services to its clients with a registered address of 2617 Syracuse Ct. Sewickley, PA 15143. Upon information and belief, Agilite's members are citizens of Pennsylvania.

6.      Defendant MMIT is a Delaware limited liability company that uses research and data in the healthcare industry to consult on pharmaceutical drugs headquartered in Yardley, Pennsylvania. Upon information and belief, MMIT's members are citizens of Pennsylvania.

7.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendants reside in or maintain a principal place of business in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**INTRODUCTION**

8.      Eye Care Leaders and Eli Research are forced to seek redress for Defendants' blatant wrongdoings, the crux of which includes teaming up with Plaintiffs' employees to start a competing business while still employed by Plaintiffs, developing a scheme to reunite Plaintiffs' former executives at a competing company, and soliciting Plaintiffs' employees to work for competing companies.

9.      In 2019, while employed as the VP of Product Management of Eye Care Leaders, Moharil teamed up with another Eli Research employee, Abhay Jaiswal, to start a competing

company, Agilite. Moharil and Jaiswal attempted to conceal Jaiswal's involvement by listing his

wife as a co-founder of Agilite. Moharil and Jaiswal also used their positions with Plaintiffs to steal

employees for Agilite.

10.     As if stealing employees for a competing business that Moharil founded while still

employed by Eye Care Leaders was not enough, it appears there was an additional scheme to reunite

former executives and high-level employees of Plaintiffs' or their related entities at an additional

competing business, MMIT. In a short time period, Plaintiffs' and their related entities' Chief

Executive Officer, Chief Financial Officer, Chief Legal Officer, Chief Human Resources Officer, a

Vice President and various managers joined Moharil at MMIT in similar high-level positions.

11.     Agilite and MMIT have even conducted business together, including seminars or

programs in India with Plaintiffs' former India employees.

12.     It is clear that Defendants hatched a plan to get the gang back together and use

knowledge and trade secrets learned from Plaintiffs to compete with Plaintiffs. Moreover,

Defendants had the audacity to enact this plan by founding a competing business while Moharil was

still employed by Eye Care Leaders.

## FACTUAL BACKGROUND

13.     Eye Care Leaders is a healthcare IT company that provides holistic solutions to the

optometry and ophthalmologic specialties and is headquartered in Charlotte, North Carolina.

14.     Eli Research is a research and information company that provides publications,

teleconference, and audio learning products to various industries including healthcare, education,

human services, sales and customer service, and technology and is headquartered in Faridabad,

India.

15.     Eye Care Leaders, Eli Research and other healthcare companies including My Vision Express, Century Vision Global, and Eye Care Live are all affiliate companies of each other and Global Growth Holdings, Inc, LLC ("Global Growth").

**Moharil's Employment Agreement**

16.     From in or about October 2017 to 2020, Moharil was employed as the VP of Product Management of Eye Care Leaders.

17.     As part of Moharil's employment by Eye Care Leaders, Moharil executed an Employment, Confidentiality, Non-Solicitation and Non-Competition Agreement (the "Employment Agreement"). A true and correct copy of the Employment Agreement is attached hereto as Exhibit 1 and incorporated for all purposes.

18.     Specifically, Moharil acknowledged that the non-competition and non-solicitation provisions in his Employment Agreement were a prerequisite to his employment and the disclosure of Confidential Information, as defined by the Employment Agreement. Ex. 1 at ¶ D.

19.     Moharil acknowledged that he would be given access to Confidential Information that Eye Care Leaders had devoted substantial time, effort, and resources to develop and compile, that disclosure of such information would have an adverse effect on Eye Care Leaders, its goodwill, prospects, and business and that Eye Care Leaders would not disclose such information to Moharil or continue to employ him without his non-competition and non-solicitation agreements. *Id.* at § 3.2.

20.     Moharil further acknowledged that the non-competition and non-solicitation provisions of his Employment Agreement are reasonable and necessary to prevent the improper use and disclosure of Eye Care Leaders's Confidential Information. *Id.*

21.     Similarly, Moharil agreed that Eye Care Leaders's Confidential Information provides a material competitive advantage to it in a highly competitive industry and that such information would be inevitably disclosed or used by Moharil in a subsequent competitive job. *Id.* at § 4.1.

22.     Moharil agreed to devote all of his "business time, attention, skill, and energy exclusively to the business of [Eye Care Leaders]" and that he would use his best efforts to promote the success of Eye Care Leaders's business. *Id.* at § 1.2.

23.     Section 3.3(a) of the Employment Agreement required Moharil to hold Eye Care Leaders's Confidential Information in strictest confidence permanently and without any time limitation, meaning after the termination of his employment. *Id.* at § 3.3(a).

24.     Moharil agreed not to disclose any of Eye Care Leaders's or its affiliates' confidential or proprietary information to any person or to use such information for the benefit of anyone other than for Eye Care Leaders without the express written permission of Eye Care Leaders of its affiliate. *Id.* at § 3.3(b).

25.     Additionally, Moharil promised that he would not, "directly or indirectly, in any capacity whatsoever, individually or on behalf of any other person or entity, engage in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, associated with, or in any manner connected with…any business engaged or about to become engaged in the Business of [Eye Care Leaders], or any of its Affiliates, in the Market Area" for the duration of his employment and two years thereafter. *Id.* at § 4.2(a)

26.     Similarly, Moharil promised that for a period of two years after his termination, he would not, directly or indirectly, solicit any customers, employees, or vendors of Eye Care Leaders of its affiliates or to interfere with any person who was an employee, contractor, supplier or customer of Eye Care Leaders or its affiliates. *Id.* at § 4.2(b)-(e).

**Moharil starts Agilite while still employed by Eye Care Leaders**

27.     Upon information and belief, Moharil began using Eye Care Leaders's and its affiliates' Confidential Information, soliciting Eye Care Leaders's or its affiliates' employees, and competing with Eye Care Leaders and its affiliates—all in direct breach of the Employment Agreement.

28.     Specifically, Moharil teamed up with Jaiswal, an employee of Eli Research, to start a competing business, Agilite, while still employed by Plaintiffs.

29.     Agilite is a competitor of Eye Care Leaders, Eli Research, and their affiliates that consults companies in the healthcare industry by providing product-based services to its clients.

30.     Agilite was formed on June 18, 2019—prior to the termination of Moharil's employment with Eye Care Leaders.

31.     Moharil has been listed as a registered officer of Agilite since its inception.

32.     Agilite's registered address is 2617 Syracuse Ct. Sewickley, PA 15143—a residential property owned by Moharil.

33.     Thus, Moharil formed or was substantially involved in the formation of a competing business while still employed by Eye Care Leaders.

34.     Upon information and belief, Moharil, either directly or indirectly, solicited employees or former employees with non-compete agreements of Eye Care Leaders, Eli Research, or their affiliates to join Agilite.

35.     These employees include:

- Abhay Jaiswal, Group Product Manager at Eye Care Leaders from January 2017 to January 2020 and Director of Product Management at Eye Care Live from February 2020 to December 2020 but has been employed as the Director of

Product Development at Agilite from October 2020 to present and recently appointed CEO of Agilite. In fact, Mr. Jaiswal's wife is believed to be a co-founder of Agilite with Moharil.

- Sujit Piyush Patniak, Director of Product Management at Eye Care Live from February 2020 to December 2020 but has been employed as the Director of Product Development at Agilite from October 2020 to present.

- Ranjeeta Basra, Program Manager of Technology at Eye Care Leaders from July 2018 to September 2019 but has been employed as a Senior Consultant at Agilite from November 2020 to present.

- Sathya Shankar Sankara Pandian, Chief of Operations-Technology at My Vision Express from September 2016 to March 2020 but has been employed as the Chief Strategy Office at Agilite from March 2020 to present.

- Sajit Nath Menon, Vice Present of Human Resources at Eye Care Leaders from February 2017 to August 2019 but is believed to be one of the founders of Agilite.

- Sagar Saxena, Senior Analyst at Eli Global since August 2016 but has been employed as a Quality Lead for Agilite from September 2020 to present.

**The gang reunites at MMIT**

36.     MMIT is a competitor of Eye Care Leaders, Eli Research or their affiliates that uses research and data in the healthcare industry to consult on pharmaceutical drugs.

37.     In or around 2020, Moharil became the Chief Technology Officer of MMIT.

38.     In addition to Moharil, other former executives and high-level employees of Global Growth and its related entities are now employed by MMIT (the "Former Global Growth Employees'), including:

- Mike Gallup, former Chief Executive Officer of Century Vision Global and MMIT's President and Chief Executive Officer since February 2020;

- Keith Giddens, former Executive Vice President-Performance Improvement of Century Vision Global and Eye Care Leaders and MMIT's VP, Client Operations then Chief Performance Officer since February 2020;

- Christa Miller, former Chief Financial Officer of Eli Global and MMIT's Chief Financial Officer since October 2020;

- Dean Galitsis, former Chief Legal Officer of Eye Care Leaders and MMIT's Lead Counsel since October 2020;

- Brandon Richards, former Chief Executive Officer, Chief Human Resources Officer and Chief Legal Officer of Century Vision Global and Eye Care Leaders and MMIT's General Counsel since October 2020; and

- Sujit Piyush Patniak, former Director of Product Management at Eye Care Live from February 2020 to December 2020 but has been employed as a Product Owner at MMIT from October 2020 to present and Director of Product Development at Agilite since October 2020.

- Abhay Jaiswal, Group Product Manager at Eye Care Leaders from January 2017 to January 2020 and Director of Product Management at Eye Care Live from February 2020 to December 2020 but has been employed as a Product Owner at MMIT from October 2020 to present and recently appointed CEO of Agilite.

- Sathya Shankar Sankara Pandian, Chief of Operations-Technology at My Vision Express from September 2016 to March 2020 but has been employed as Product Owner at MMIT since March 2020.

39.     Upon information and belief, Mohrail, either directly or indirectly, at the direction of or with the assistance of the above named MMIT employees and executives, solicited employees of Eye Care Leaders, Eli Research or their affiliates to join MMIT.

40.     It cost Eye Care Leaders, Eli Research or their affiliates in excess of $65,000 per employee to backfill these valuable positions including, the time and money it took to recruit new employees, negotiate new employment and confidentiality agreements, and to train and on-board these replacements. Additionally, these employees took with them crucial information such as proprietary software, domain, systems, and procedural knowledge, business plans, computer programs and codes, employee rosters, analysis and operating approaches, and valuable customer and business contact knowledge.

**Defendants use Plaintiffs' confidential information**

41.     Upon information and belief, Moharil, upon his own volition or at the direction of the Former Global Growth Employees, has also taken confidential information from Eye Care Leaders, Eli Research, or their affiliates and used such information for the benefit of himself, Agilite, and MMIT. This confidential information is vital to the business of Eye Care Leaders, Eli Research, and their affiliates.

42.     Such confidential information likely includes business and customer contacts in India and the United States, proprietary data, software, domain, systems, and procedural knowledge, business plans, computer programs and codes, employee rosters, analysis and operating approaches, and processes related to the healthcare industry and customer service and products in same.

43.     Indeed, Moharil agreed in his Employment Agreement that confidential information of Eye Care Leaders, Eli Research, or their affiliates would be "inevitably disclosed or used" by him in a "subsequent competitive job." Ex. 1, § 4.1.

**Moharil's actions breached his Employment Agreement**

44.     Moharil has breached the Employment Agreement by competing with Eye Care Leaders and its affiliates both before and within two years after his employment by forming and working for Agilite as well as working for MMIT.

45.     Moharil has likewise breached the Agreement by soliciting employees from Plaintiffs and their affiliates both before and within two years after his employment by bringing those employees to Agilite and/or MMIT.

### CLAIM I
### Breach of Employment Agreement
*Against Moharil*

46.     Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs.

47.     From in or about October 2017 to 2020, Moharil was employed as the VP of Product Management of Eye Care Leaders.

48.     As part of Moharil's employment by Eye Care Leaders, Moharil executed an Employment Agreement that contained provisions regarding covenants not to disclose information, not to compete, and not to solicit.

49.     The Employment Agreement is a valid, binding, and enforceable contract.

50.     Eye Care Leaders complied with the terms of the Employment Agreement and performed all obligations thereunder.

51.     Moharil breached the terms of the Employment Agreement by (1) forming a competing company, Agilite, and serving as an officer of that company both while still employed by Eye Care Leaders and after termination of his employment; (2) soliciting Plaintiffs' or their affiliates' employees to work for Agilite; (3) working for MMIT, a competitor of Eli Research prior to the two-year expiration of his promise not to compete; (4) soliciting Plaintiffs' or their affiliates' employees to work for MMIT; and (5) taking confidential information from Plaintiffs or their affiliates and using such information for the benefit of himself, Agilite, and MMIT.

52.     Eye Care Leaders suffered damages as a result of Moharil's breach of the Employment Agreement in an amount that exceeds the jurisdictional limits of this Court and which will be determined at trial.

### CLAIM II
### Breach of Fiduciary Duties
*Against Moharil*

53.     Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs.

54.     Moharil was a Vice President of Product Management of Eye Care Leaders.

55.     As a Vice President of Eye Care Leaders, Moharil owed Eye Care Leaders fiduciary duties, including the duty of loyalty to act in its interests, a duty to not compete against Eye Care Leaders, and a duty to disclose matters that would have an adverse effect on Eye Care Leaders's business, including Moharil's conflicts of interest.

56.     Moharil breached his fiduciary duties to Eye Care Leaders by: (1) forming a competing company, Agilite, and serving as an officer of that company both while still employed by Eye Care Leaders and after termination of his employment; (2) soliciting Plaintiffs' or their affiliates' employees to work for Agilite; (3) working for MMIT, a competitor of Eli Research prior

to the two-year expiration of his promise not to compete; (4) soliciting Plaintiffs' or their affiliates' employees to work for MMIT; and (5) taking confidential information from Plaintiffs or their affiliates and using such information for the benefit of himself, Agilite, and MMIT.

57.     Eye Care Leaders suffered harm and Moharil personally benefitted as a direct result of these acts, and Eye Care Leaders is entitled to recover its actual damages, lost sales/profits, diverted business opportunities, punitive damages, and pre-and post-judgment interests and costs. Eye Care Leaders are further entitled to recover their attorney's fees and costs.

**CLAIM III**
**Tortious Interference with Existing Contract**
*Against Agilite*

58.     Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs.

59.     Moharil entered into a valid and binding contractual agreement with Eye Care Leaders, prohibiting Moharil from competing with Eye Care Leaders and its affiliates and soliciting Eye Care Leaders's and its affiliates' employees.

60.     In addition to Moharil, other employees of Eye Care Leaders, Eli Research, and their affiliates, entered into valid and binding contractual agreements with Eli Research, prohibiting them from competing with Eli Research and its affiliates and soliciting Eli Research's and its affiliates' employees. True and correct copies of these employment agreements are attached hereto as Exhibit 2.

61.     Given the fact that Agilite was founded by Moharil and other employees of Plaintiffs or their relatives, there is no doubt Agilite was aware of the existence and validity of these contracts.

62.     Notwithstanding this knowledge, Agilite intentionally interfered with Moharil and other Eli Research or its affiliates' employees' contracts with Plaintiffs by soliciting Plaintiffs' employees to not only leave but to work for competing businesses.

63.     This intentional interference is part and parcel with Defendants' scheme to reunite a substantial group of Plaintiffs' former executives and high-level employees, with shared knowledge of Plaintiffs' confidential information and business operations, to compete with Plaintiffs.

64.     Agilite's tortious interference has directly and proximately caused actual damage or loss to Plaintiffs in the form of lost sales and diverted business opportunities as well as the costs to adequately replace the numerous poached employees, and Plaintiffs are entitled to recover their actual damages, including lost profits, punitive damages for Agilite's intentional acts, and pre- and post-judgment interests and costs. Plaintiffs are further entitled to recover their attorney's fees and costs.

65.     All conditions precedent to Plaintiffs' claims have occurred or been satisfied.

### CLAIM IV
### Tortious Interference with Existing Contract
*Against MMIT*

66.     Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs.

67.     Moharil entered into a valid and binding contractual agreement with Eye Care Leaders, prohibiting Moharil from competing with Eye Care Leaders and its affiliates and soliciting Eye Care Leaders's and its affiliates' employees.

68.     In addition to Moharil, other employees of Plaintiffs entered into valid and binding contractual agreements with Plaintiffs, prohibiting them from competing with Eli Research and its affiliates and soliciting Eli Research's and its affiliates' employees.

69.     MMIT and the Former Global Growth Employees, who make up over half of MMIT's executive team, were aware of the existence and validity of these contracts.

70.     Notwithstanding this knowledge, MMIT, on its own and through the Former Global Growth Employees, intentionally interfered with Moharil and other of Plaintiffs' or their affiliates' employees' contracts with Plaintiffs by soliciting Plaintiffs' employees to not only leave but to work for competing businesses.

71.     This intentional interference is part and parcel with Defendants' scheme to reunite a substantial group of Plaintiffs' former executives and high-level employees, with shared knowledge of Plaintiffs' confidential information and business operations, to compete with Plaintiffs.

72.     MMIT's tortious interference has directly and proximately caused actual damage or loss to Plaintiffs in the form of lost sales and diverted business opportunities as well as the costs to adequately replace the numerous poached employees, and Plaintiffs are entitled to recover their actual damages, including lost profits, punitive damages for MMIT's intentional acts, and pre- and post-judgment interests and costs. Plaintiffs are further entitled to recover their attorney's fees and costs.

73.     All conditions precedent to Plaintiffs' claims have occurred or been satisfied.

### CLAIM V
### Tortious Interference with Existing Contract
*Against Moharil*

74.     Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs.

75.     Employees of Plaintiffs entered into valid and binding contractual agreements with Plaintiffs prohibiting them from competing with Eli Research and its affiliates and soliciting Eli Research's and its affiliates' employees.

76.     Moharil was aware of the existence and validity of these contracts that contained similar if not identical restrictive covenants to his own Employment Agreement.

77.     Notwithstanding this knowledge, Moharil, on his own or in concert with and/or at the direction of the Former Global Growth Employees, intentionally interfered with multiple other Eye Care Leaders's, Eli Research's or its affiliates' employees' contracts with Plaintiffs by soliciting Plaintiffs' employees to not only leave but to work for competing businesses.

78.     This intentional interference is part and parcel with Defendants' scheme to reunite a substantial group of Plaintiffs' former executives and high-level employees, with shared knowledge of Plaintiffs' confidential information and business operations, to compete with Plaintiffs.

79.     Moharil's tortious interference has directly and proximately caused actual damage or loss to Plaintiffs in the form of lost sales and diverted business opportunities as well as the costs to adequately replace the numerous poached employees, and Plaintiffs are entitled to recover their actual damages, including lost profits, punitive damages for Moharil's intentional acts, and pre- and post-judgment interests and costs. Plaintiffs are further entitled to recover their attorney's fees and costs.

80.     All conditions precedent to Plaintiffs' claims have occurred or been satisfied.

### CLAIM VI
### Misappropriation of Trade Secrets
*Against Moharil*

81.     Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs.

82.     Pursuant to Moharil's Employment Agreement, Confidential Information includes trade secrets concerning the business and affairs of Eye Care Leaders and its affiliates. Ex. 1 at § 3.1.

83.     Section 3.1 of the Employment Agreement further defines what constitutes "Confidential Information." *Id.*

84.     Moharil agreed that all Confidential Information, and physical embodiments thereof, are the exclusive property of Eye Care Leaders or its affiliates. *Id.* at § 3.3.

85.     Moharil further agreed that Eye Care Leaders's Confidential Information would be inevitably disclosed or used by him in a subsequent competitive job. *Id.* at § 4.1.

86.     Consequently, Moharil knew or should have known of the trade secrets owned by Eye Care Leaders or its affiliates.

87.     Additionally, the Former Global Growth Employees that now make up the majority of the executive team of MMIT knew or should have known of same.

88.     Specifically, Moharil and the Former Global Growth Employees were exposed to and knew details regarding Plaintiffs' business and customer contacts in India and the U.S., proprietary data, software, domain, systems, and procedural knowledge, business plans, computer programs and codes, employee rosters, analysis and operating approaches, and valuable customer and business contact knowledge.

89.     The trade secrets are not known or made available to the public, nor are they readily ascertainable through independent development.

90.     Plaintiffs take reasonable measures to protect the trade secrets from disclosure, including through the protections and restrictive covenants set forth in the Employment Agreement which is a pre-requisite for the disclosure of Confidential Information. *Id.* at ¶ D, § 3.2.

91.     Moharil had the specific opportunity to acquire Plaintiffs' trade secrets through access to Plaintiffs' confidential information through his employment. *Id.* at § 3.2.

92.     Upon information and belief, Moharil did in fact acquire and use Plaintiffs' trade secrets for his own and separate benefit and for the benefit of Agilite and MMIT without Plaintiffs' express or implied consent or authority, and thereby misappropriated the Plaintiffs' trade secrets within the meaning of the Texas Uniform Trade Secrets Act (Tex. Civ. Prac. & Rem. Code Ann. § 134A.002) and Federal Defend Trade Secrets Act (18 U.S.C. § 1836).

93.     Plaintiffs are entitled to a preliminary and permanent injunction against the continued misappropriation and misuse of their trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(A) and Tex. Civ. Prac. & Rem. Code Ann. § 134A.003.

94.     Plaintiffs have also suffered actual damages and unjust enrichment has occurred caused by Moharil's misappropriation of Plaintiffs' trade secrets in an amount to be proven at trial pursuant to 18 U.S.C. § 1836(b)(3)(B) and Tex. Civ. Prac. & Rem. Code Ann. § 134A.004.

95.     Moharil's misappropriation of trade secrets was willful and malicious, and Plaintiffs are entitled to recover exemplary damages from Moharil pursuant to 18 U.S.C. § 1836(b)(3)(C) and Tex. Civ. Prac. & Rem. Code Ann. § 134A.004.

96.     Moharil's misappropriation was willful and malicious, and Plaintiffs are therefore entitled to recover their attorneys' fees from Moharil pursuant to 18 U.S.C. § 1836(b)(3)(D) and Tex. Civ. Prac. & Rem. Code Ann. § 134A.005.

## CLAIM VII
### Application for Temporary and Permanent Injunctive Relief
*Against All Defendants*

97.     Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs.

98.     Plaintiffs seek injunctive relief concerning the activities of Moharil, Agilite, and MMIT.

99.     Moharil agreed that violation of the non-disclosure, non-competition, and non-solicitation provisions of his Employment Agreement would leave Eye Care Leaders without a reasonable or adequate damages remedy and that Eye Care Leaders shall be entitled to an injunction restraining any violation or threatened violation of any such terms by Moharil or other persons. Ex. 1 at § 4.4(a).

100.    Plaintiffs seek a permanent injunction, ordering the following:

   i.   Moharil, Agilite, MMIT, and their representatives or agents to cease, desist, and refrain from competing with Plaintiffs in violation of the Employment Agreement;

   ii.  Moharil, Agilite, MMIT and their representatives or agents to cease, desist, and refrain from soliciting Plaintiffs' or their affiliates' employees in violation of the Employment Agreement;

   iii. Agilite, MMIT and their representatives or agents to cease, desist, and refrain from tortiously interfering with Plaintiffs' or their affiliates' contractual relationships with Moharil;

   iv.  Moharil, Agilite, MMIT and their representatives or agents to cease, desist, and refrain from tortiously interfering with Plaintiffs' or their affiliates' contractual relationships with their employees; and

   v.   Moharil, Agilite, MMIT and their representatives or agents to cease, desist, and refrain from using Plaintiff's confidential materials and trade secrets in violation of the Non-Compete Agreement, the Texas Uniform Trade Secrets Act, and the Federal Defend Trade Secrets Act.

101.    Plaintiffs have suffered an irreparable injury to their business, their reputation within the marketplace, as well as their relationships with employees and customers through Moharil, Agilite, and MMIT's actions.

102.    The issuance of a permanent injunction preventing Moharil, Agilite, and MMIT from continuing to perform the illegal activity described herein is necessary to prevent substantial and irreparable injury to Plaintiffs and their affiliates.

103.    The issuance of these orders and injunctions also minimizes the risk of any further illegal solicitation of Plaintiffs' or their affiliates' employees.

104.    Without the injunctive relief requested, Plaintiffs will be left without an adequate remedy at law.

105.    Considering the balance of hardship between Plaintiffs and Moharil, Agilite, and MMIT, an injunction is warranted.

106.    Public interest would not be disserved by the issuance of a permanent injunction against Moharil, Agilite, and MMIT.

107.    Moharil, Agilite, and MMIT should be permanently enjoined from continuing the wrongful conduct described herein.

108.    Pursuant to Section 4.4(a) of the Employment Agreement, Plaintiffs also seek their costs and attorneys' fees incurred in obtaining this injunction.

## JURY DEMAND

109.    Plaintiffs request a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendants, jointly and severally, for:

(a)      actual, punitive, and consequential damages;

(b)      lost sales/profits and lost business opportunities;

(c)      attorneys' fees and litigation costs;

(d)      costs of court;

(e)      pre- and post-judgment interest;

(f)      temporary injunctive relief;

(g)      permanent injunctive relief;

(h)      all other relief, at law or in equity, to which Plaintiffs may be entitled.


Dated: January 10, 2022             Respectfully submitted,


   *s/ John M. Miller*
John P. Miller
  PA ID No. 91304
  jmiller@dfllegal.com
Andrew P. Giel
  PA ID No. 326240
  agiel@dfllegal.com
**Dingess, Foster, Luciana, Davidson &**
  **Chleboski LLP**
20 Stanwix St., Third Floor
Pittsburgh, PA 15222
Phone: 412-926-1800
Fax:   412-926-1801

*Counsel for Plaintiffs ECL Group, LLC,*
  *d/b/a Eye Care Leaders, and Eli Research*
  *India Private Limited*