IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ECL GROUP, LLC d/b/a EYE CARE LEADERS and ELI RESEARCH INDIA PRIVATE LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> SOURABH MOHARIL, ABHAY JAISWAL, AGILITE GLOBAL SOLUTIONS COMPANY, LLC, and MANAGED MARKETS INSIGHT AND TECHNOLOGY, LLC. <br><br> Defendants | CIVIL ACTION NO. 2:22-cv-00057 |

## FIRST AMENDED COMPLAINT

Plaintiffs ECL Group, LLC d/b/a Eye Care Leaders ("Eye Care Leaders") and Eli Research India Private Limited ("Eli Research") (together, "Plaintiffs") file this First Amended Complaint against Sourabh Moharil ("Moharil"), Abhay Jaiswal ("Jaiswal"), Agilite Global Solutions Company, LLC ("Agilite"), and Managed Markets Insight and Technology, LLC ("MMIT) (together, "Defendants") as follows:

### PARTIES, JURISDICTION, AND VENUE

1.  This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 in that there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest or costs.

2.  Plaintiff Eye Care Leaders is a healthcare IT company that provides holistic solutions to the optometry and ophthalmologic specialties and is headquartered in Charlotte, North Carolina. Eye Care Leaders' sole member is The ECL Trust, a Delaware statutory trust. The Trustee of The ECL Trust is Hugh Steven Wilson, a citizen of California. The sole beneficiary of The ECL Trust is Robert Gaddy, a citizen of North Carolina.

1

3. Plaintiff Eli Research is a research and information company that provides publications, teleconference, and audio learning products to various industries including healthcare, education, human services, sales and customer service, and technology and is headquartered in Faridabad, India.

4. Defendant Sourabh Moharil is a citizen, resident, and domiciliary of Pennsylvania.

5. Defendant Abhay Jaiswal is a citizen, resident, and domiciliary of Pennsylvania.

6. Defendant Agilite is a Pennsylvania limited liability company that consults in the healthcare industry by providing product-based services, including product strategy, product management, product launch expertise and product technology execution expertise, to its clients with a registered address of 2617 Syracuse Ct. Sewickley, PA 15143. Upon information and belief, Agilite's members are citizens of Pennsylvania.

7. Defendant MMIT is a Delaware limited liability company that uses technology to provide market access data, analytics, and insights in the healthcare industry and is headquartered in Yardley, Pennsylvania. Upon information and belief, MMIT's members are citizens of Pennsylvania.

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendants reside in or maintain a principal place of business in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**INTRODUCTION**

9. Eye Care Leaders and Eli Research are forced to seek redress for Defendants' blatant wrongdoings, the crux of which includes teaming up with Plaintiffs' employees to start a competing business while still employed by Plaintiffs, developing a scheme to reunite Plaintiffs' former

executives at a competing company, and soliciting Plaintiffs' employees to work for competing companies.

10. In 2019, while employed as the VP of Product Management of Eye Care Leaders, Moharil teamed up with another Eli Research employee at the time, Director of Product Management for Eye Care Live, Jaiswal, to start a competing company, Agilite. Moharil and Jaiswal attempted to conceal Jaiswal's involvement by listing his wife as a co-founder of Agilite. Moharil and Jaiswal also used their positions with Plaintiffs to steal employees for Agilite.

11. As if stealing employees for a competing business that Moharil and Jaiswal founded while still employed by Plaintiffs was not enough, it appears there was an additional scheme to reunite former executives and high-level employees of Plaintiffs' or their related entities at an additional competing business, MMIT. In a short time period, Plaintiffs' and their related entities' Chief Executive Officer, Chief Financial Officer, Chief Legal Officer, Chief Human Resources Officer, a Vice President and various managers joined Moharil at MMIT in similar high-level positions.

12. Agilite and MMIT have even conducted business together, including seminars or programs in India with Plaintiffs' former India employees.

13. It is clear that Defendants hatched a plan to get the gang back together and use knowledge and trade secrets learned from Plaintiffs to compete with Plaintiffs. Moreover, Defendants had the audacity to enact this plan by founding a competing business while they were still employed by Plaintiffs.

## FACTUAL BACKGROUND

14. Eye Care Leaders is a healthcare IT company that provides holistic solutions to the optometry and ophthalmologic specialties and is headquartered in Charlotte, North Carolina.

15. Eli Research is a research and information company that provides publications, teleconference, and audio learning products to various industries including healthcare, education, human services, sales and customer service, and technology and is headquartered in Faridabad, India.

16. Eye Care Leaders, Eli Research and other healthcare companies including My Vision Express, Century Vision Global, and Eye Care Live are all affiliate companies of each other and Global Growth Holdings, Inc, LLC ("Global Growth").

**Moharil's Employment Agreement**

17. From in or about October 2017 to 2020, Moharil was employed as the VP of Product Management of Eye Care Leaders. As part of Moharil's employment by Eye Care Leaders, Moharil executed an Employment, Confidentiality, Non-Solicitation and Non-Competition Agreement (the "Moharil Employment Agreement"). A true and correct copy of the Moharil Employment Agreement is attached hereto as Exhibit 1 and incorporated for all purposes.

18. In the agreement, Moharil specifically acknowledged that the non-competition and non-solicitation provisions in his Employment Agreement were a prerequisite to his employment and the disclosure of Confidential Information, as defined by the Employment Agreement. Ex. 1, ¶ D.

19. Moharil acknowledged that he would be given access to Confidential Information that Eye Care Leaders had devoted substantial time, effort, and resources to develop and compile, that disclosure of such information would have an adverse effect on Eye Care Leaders, its goodwill, prospects, and business and that Eye Care Leaders would not disclose such information to Moharil or continue to employ him without his non-competition and non-solicitation agreements. *Id.* at § 3.2.

20. Similarly, Moharil agreed that Eye Care Leaders' Confidential Information provides a material competitive advantage to it in a highly competitive industry and that such information would be inevitably disclosed or used by Moharil in a subsequent competitive job. *Id.* at § 4.1.

21. Moharil agreed to devote all of his "business time, attention, skill, and energy exclusively to the business of [Eye Care Leaders]," and to use his best efforts to promote the success of Eye Care Leaders' business. *Id.* at § 1.2.

22. Additionally, Moharil promised that he would not, "directly or indirectly, in any capacity whatsoever, individually or on behalf of any other person or entity, engage in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, associated with, or in any manner connected with…any business engaged or about to become engaged in the Business of [Eye Care Leaders], or any of its Affiliates, in the Market Area" for the duration of his employment and two years thereafter. *Id.* at § 4.2(a)

23. Similarly, Moharil promised that, for a period of two years after his termination, he would not "employ, either directly or indirectly, any current employee of [Eye Care Leaders] or its Affiliates or any individual who was an employee of [Eye Care Leaders] or its Affiliates at any time" during his employment. Moharil also promised to not "directly or indirectly, in any capacity whatsoever, individually or on behalf of any other person or entity, engage in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, associated with, or in any manner connected with…any business engaged or about to become engaged in the Business of [Eye Care Leaders] or its affiliates. *Id.* at § 4.2(b)-(e).

**Jaiswal's Employment Agreement**

24. From in or about April 2017 to January 2020, Jaiswal was employed as the Group Product Manager of Eye Care Leaders, and subsequently, as Director of Product Management at Eye Care Live from February 2020 to December 2020.

25. As part of Jaiswal's employment, he executed a Non-Competition, Confidentiality, and Non-Solicitation Agreement with Eli Research (the "Jaiswal Employment Agreement," together with the Moharil Employment Agreement the "Employment Agreements"). A true and correct copy of the Jaiswal Employment Agreement is attached hereto as Exhibit 2 and incorporated for all purposes.

26. Under the agreement, Jaiswal agreed that, during his employment, he would devote his best efforts, loyalty, good faith, and entire working time, and entire ability to the services and best interests of Eli Research and that he would not serve as a director, consultant or other similar positions for another company or business. *Id.* at § 15.

27. Similarly, Jaiswal agreed that, while employed by Eli Research, he would not directly or indirectly "own, operate, assist, work for, or provide services to any person or entity that competes with Eli Research" and further, if he learned of someone who intended to compete against Eli Research or its solicit its employees or customers, he would immediately inform Eli Research of this in writing. *Id.* at §§ 16-17.

28. Jaiswal also agreed and promised that, during his employment with Eli Research, he would not directly or indirectly "own, operate, or perform services that are the same or substantially similar to those performed by [him] while employed by Eli Research for any person or any entity engaged in a business that produces, markets, distributes, or sells products or services of a similar nature to those developed or commercialized by Eli Research." *Id.* at § 22.

29. Additionally, Jaiswal agreed that "any solicitation, luring away, inducement to have any third party or individual cease or modify its relationship with Eli Research, or hiring of employees of Eli Research, or other direct or indirect participation in such activities, would be highly detrimental to the business of Eli research, thereby causing great and irreparable harm and Eli Research shall be well within its right to claim all losses and damages from the employee resulting from the above said activity." *Id.* at § 25.

30. Jaiswal also promised that for a period of two years after his termination, he would not, directly or indirectly, solicit, lure, or hire or induce any third party to cease or modify its relationship with Eli Research, including any customers, employees, or vendors of Eli Research or to interfere with any person who was an employee, contractor, supplier or customer of Eli Research. *Id.* at §§ 26-27.

**Moharil and Jaiswal start Agilite while still employed by Plaintiffs**

31. Moharil teamed up with Jaiswal to start a competing business, Agilite, while still employed by Plaintiffs. Agilite is a competitor of Eye Care Leaders, Eli Research, and their affiliates that consults companies in the healthcare industry by providing product strategy, management and launch expertise, as well as product technology execution expertise to its clients. Agilite's product technology execution expertise is based in India, where, as set forth below, the product and technology focused employees were solicited.

32. Agilite was formed on June 18, 2019—prior to the termination of Moharil and Jaiswal's employment with Plaintiffs.

33. Moharil and Jaiswal's wife have been listed as a registered officer of Agilite since its inception.

27650150v1 92132.040.35

34. Agilite's registered address is 2617 Syracuse Ct. Sewickley, PA 15143—a residential property owned by Moharil and associated with Jaiswal.

35. Jaiswal also has been employed as the Director of Product Development at Agilite from October 2020 to present and recently appointed Chief Executive Officer of Agilite. Thus, Jaiswal was actively working for Agilite while still employed by Eli Research.

36. Moharil and Jaiswal, either directly or indirectly through Agilite, solicited and hired employees or former employees with non-compete agreements of Eye Care Leaders, Eli Research, or their affiliates to join Agilite.

37. These employees include:

- Abhay Jaiswal, Group Product Manager at Eye Care Leaders from January 2017 to January 2020 and Director of Product Management at Eye Care Live from February 2020 to December 2020 but has been employed as the Director of Product Development at Agilite from October 2020 to present and recently appointed CEO of Agilite. In fact, Mr. Jaiswal's wife is a co-founder of Agilite with Moharil.

- Sujit Piyush Patniak, Director of Product Management at Eye Care Live from February 2020 to December 2020 but has been employed as the Director of Product Development at Agilite from October 2020 to present.

- Ranjeeta Basra, Program Manager of Technology at Eye Care Leaders from July 2018 to September 2019 but has been employed as a Senior Consultant at Agilite from November 2020 to present.

- Sathya Shankar Sankara Pandian, Chief of Operations-Technology at My Vision Express from September 2016 to March 2020 but has been employed as the Chief Strategy Office at Agilite from March 2020 to present.

- Sajit Nath Menon, Vice Present of Human Resources at Eye Care Leaders from February 2017 to August 2019 but is believed to be one of the founders of Agilite.

- Sagar Saxena, Senior Analyst at Eli Global since August 2016 but has been employed as a Quality Lead for Agilite from September 2020 to present.

**The gang reunites at MMIT**

38. MMIT is a competitor of Eye Care Leaders, Eli Research or their affiliates that uses technology to provide market access data, analytics, and insights in the healthcare industry.

39. In or around 2020, Moharil became the Chief Technology Officer of MMIT.

40. In addition to Moharil, other former executives and high-level employees of Global Growth and its related entities are now employed by MMIT (the "Former Global Growth Employees'), including:

- Mike Gallup, former Chief Executive Officer of Century Vision Global and MMIT's President and Chief Executive Officer since February 2020;

- Keith Giddens, former Executive Vice President-Performance Improvement of Century Vision Global and Eye Care Leaders and MMIT's VP, Client Operations then Chief Performance Officer since February 2020;

- Christa Miller, former Chief Financial Officer of Eli Global and MMIT's Chief Financial Officer since October 2020;

- Dean Galitsis, former Chief Legal Officer of Eye Care Leaders and MMIT's Lead Counsel since October 2020;

- Brandon Richards, former Chief Executive Officer, Chief Human Resources Officer and Chief Legal Officer of Century Vision Global and Eye Care Leaders and MMIT's General Counsel since October 2020; and

- Sujit Piyush Patniak, former Director of Product Management at Eye Care Live from February 2020 to December 2020 but has been employed as a Product Owner at MMIT from October 2020 to present and Director of Product Development at Agilite since October 2020.

- Abhay Jaiswal, Group Product Manager at Eye Care Leaders from January 2017 to January 2020 and Director of Product Management at Eye Care Live from February 2020 to December 2020 but has been employed as a Product Owner at MMIT from October 2020 to present and recently appointed CEO of Agilite.

- Sathya Shankar Sankara Pandian, Chief of Operations-Technology at My Vision Express from September 2016 to March 2020 but has been employed as Product Owner at MMIT since March 2020.

41. Mohrail, either directly or indirectly, at the direction of or with the assistance of the above named MMIT employees and executives, solicited employees of Eye Care Leaders, Eli Research or their affiliates to join MMIT.

**Plaintiffs' Damages**

42. It cost Eye Care Leaders, Eli Research or their affiliates in excess of $65,000 per employee to backfill these valuable positions including, without limitation, the time and money it

took to recruit new employees, negotiate new employment and confidentiality agreements, and to train and on-board these replacements.

**CLAIM I – BREACH OF EMPLOYMENT AGREEMENTS**
(Against Moharil and Jaiswal)

43. Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs.

44. From in or about October 2017 to 2020, Moharil was employed as the VP of Product Management of Eye Care Leaders.

45. From in or about April 2017 to January 2020, Jaiswal was employed as the Group Product Manager for Eye Care Leaders and then from February 2020 to December 2020 as the Director of Product Management at Eye Care Live.

46. As part of Moharil and Jaiswal's employment by Plaintiffs, they executed Employment Agreements that contained provisions regarding covenants not to disclose information, not to compete and not to solicit.

47. The Employment Agreements are valid, binding, and enforceable contracts.

48. Plaintiffs complied with the terms of the Employment Agreements and performed all obligations thereunder.

49. Moharil and Jaiswal breached the terms of the Employment Agreements by (1) forming a competing company, Agilite, and serving as an officer and/or working for that company both while still employed by Plaintiffs and after termination of their employment; and (2) soliciting Plaintiffs' or their affiliates' employees to work for Agilite.

50. Moharil further breached the terms of his Employment Agreement by (1) hiring Plaintiffs' or their affiliates' employees to work for Agilite; (2) working for MMIT, a competitor of

Eli Research, prior to the two-year expiration of his promise not to compete; and (3) soliciting Plaintiffs' or their affiliates' employees to work for MMIT.

51. Jaiswal further breached the terms of his Employment Agreement by failing to report to Plaintiffs that Moharil intended to compete against and recruit employees of Plaintiffs.

52. Plaintiffs suffered damages as a result of Moharil's and Jaiswal's breach of their Employment Agreements in an amount that exceeds the jurisdictional limits of this Court and which will be determined at trial.

## CLAIM II – BREACH OF FIDUCIARY DUTY
(Against Moharil)

53. Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs.

54. Moharil was Vice President of Product Management of Eye Care Leaders. As Vice President of Eye Care Leaders, Moharil occupied a high position of trust and owed Eye Care Leaders fiduciary duties, including the duty of loyalty to act in its best interests and disclose matters that would have an adverse effect on its business, including his conflicts of interest. Moharil breached his fiduciary duties to Eye Care Leaders by, among other things, forming a competing company, Agilite, and serving as an officer of that company while still employed by Eye Care Leaders, and by soliciting Plaintiffs' or their affiliates' employees to work for Agilite.

55. Eye Care Leaders suffered harm and Moharil personally benefitted as a direct result of these acts, and Eye Care Leaders is entitled to recover its actual damages, lost sales/profits, diverted business opportunities, punitive damages, and pre-and post-judgment interests and costs. Eye Care Leaders are further entitled to recover their attorney's fees and costs.

## CLAIM III – TORTIOUS INTERFERENCE WITH EXISTING CONTRACT
(Against Agilite)

56. Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs.

57. Moharil and Jaiswal entered into a valid and binding contractual agreement with Plaintiffs, prohibiting Moharil and Jaiswal from competing with Plaintiffs and their affiliates and soliciting Plaintiffs' and their affiliates' employees.

58. In addition to Moharil and Jaiswal, other employees of Plaintiffs and their affiliates, entered into valid and binding contractual agreements with Eli Research, prohibiting them from competing with Eli Research and its affiliates and soliciting Eli Research's and its affiliates' employees. True and correct copies of these employment agreements are attached hereto as Exhibit 3.

59. Given that Agilite was founded by Moharil, Jaiswal, and other employees of Plaintiffs or their relatives, there is no doubt Agilite was aware of the existence and validity of these contracts between Plaintiffs and their employees.

60. Notwithstanding this knowledge, Agilite intentionally interfered with Moharil's, Jaiswal's, and other Eli Research or its affiliates' employees' contracts with Plaintiffs by soliciting Plaintiffs' employees to not only leave but to work for competing businesses.

61. This intentional interference is part and parcel with Defendants' scheme to reunite a substantial group of Plaintiffs' former executives and high-level employees, with shared knowledge of Plaintiffs' confidential information and business operations, to compete with Plaintiffs.

62. Agilite's tortious interference has directly and proximately caused actual damage or loss to Plaintiffs in the form of lost sales and diverted business opportunities as well as the costs to adequately replace the numerous poached employees, and Plaintiffs are entitled to recover their

actual damages, including lost profits, punitive damages for Agilite's intentional acts, and pre- and post-judgment interests and costs. Plaintiffs are further entitled to recover their attorney's fees and costs.

63. All conditions precedent to Plaintiffs' claims have occurred or been satisfied.

### CLAIM IV – TORTIOUS INTERFERENCE WITH EXISTING CONTRACT
(Against MMIT)

64. Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs.

65. Moharil entered into a valid and binding contractual agreement with Eye Care Leaders, prohibiting Moharil from competing with Eye Care Leaders and its affiliates and soliciting Eye Care Leaders' and its affiliates' employees.

66. In addition to Moharil, other employees of Plaintiffs entered into valid and binding contractual agreements with Plaintiffs prohibiting them from competing with Eli Research and its affiliates and soliciting Eli Research's and its affiliates' employees.

67. MMIT and the Former Global Growth Employees, who make up over half of MMIT's executive team, were aware of the existence and validity of these contracts between Plaintiffs and their employees.

68. Notwithstanding this knowledge, MMIT, on its own and through the Former Global Growth Employees, intentionally interfered with Moharil and other of Plaintiffs' or their affiliates' employees' contracts with Plaintiffs by soliciting Plaintiffs' employees to not only leave but to work for competing businesses.

69. This intentional interference is part and parcel with Defendants' scheme to reunite a substantial group of Plaintiffs' former executives and high-level employees, with shared knowledge of Plaintiffs' confidential information and business operations, to compete with Plaintiffs.

70. MMIT's tortious interference has directly and proximately caused actual damage or loss to Plaintiffs in the form of lost sales and diverted business opportunities as well as the costs to adequately replace the numerous poached employees, and Plaintiffs are entitled to recover their actual damages, including lost profits, punitive damages for MMIT's intentional acts, and pre- and post-judgment interests and costs. Plaintiffs are further entitled to recover their attorney's fees and costs.

71. All conditions precedent to Plaintiffs' claims have occurred or been satisfied.

### CLAIM V – TORTIOUS INTERFERENCE WITH EXISTING CONTRACT
(Against Moharil and Jaiswal)

72. Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs.

73. Employees of Plaintiffs entered into valid and binding contractual agreements with Plaintiffs prohibiting them from competing with Eli Research and its affiliates and soliciting Eli Research's and its affiliates' employees.

74. Moharil and Jaiswal were aware of the existence and validity of these contracts that contained similar if not identical restrictive covenants to their own Employment Agreements.

75. Notwithstanding this knowledge, Moharil and Jaiswal, on their own or in concert with and/or at the direction of the Former Global Growth Employees, intentionally interfered with multiple other Eye Care Leaders', Eli Research's or its affiliates' employees' contracts with Plaintiffs by soliciting Plaintiffs' employees to not only leave but to work for competing businesses.

76. This intentional interference is part and parcel with Defendants' scheme to reunite a substantial group of Plaintiffs' former executives and high-level employees, with shared knowledge of Plaintiffs' confidential information and business operations, to compete with Plaintiffs.

77. Moharil and Jaiswal's tortious interference has directly and proximately caused actual damage or loss to Plaintiffs in the form of lost sales and diverted business opportunities as well as the costs to adequately replace the numerous poached employees, and Plaintiffs are entitled to recover their actual damages, including lost profits, punitive damages for Moharil and Jaiswal's intentional acts, and pre- and post-judgment interests and costs. Plaintiffs are further entitled to recover their attorney's fees and costs.

78. All conditions precedent to Plaintiffs' claims have occurred or been satisfied.

**APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF**

79. Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs.

80. Plaintiffs seek injunctive relief concerning the activities of Moharil, Jaiswal, Agilite, and MMIT.

81. Moharil and Jaiswal agreed that violations of the non-competition and/or non-solicitation provisions of their Employment Agreements would leave Plaintiffs without a reasonable or adequate damages remedy and that Plaintiffs shall be entitled to an injunction restraining any violation or threatened violation of any such terms by Moharil, Jaiswal, or other persons. Ex. 1, §4.4(a); Ex. 2, §30.

82. Plaintiffs seek a permanent injunction, ordering the following:

   i. Moharil, Jaiswal, Agilite, MMIT, and their representatives or agents to cease, desist, and refrain from competing with Plaintiffs in violation of the Employment Agreements;

   ii. Moharil, Jaiswal, Agilite, MMIT and their representatives or agents to cease, desist, and refrain from hiring or soliciting Plaintiffs' or their affiliates' employees in violation of the Employment Agreements;

      iii.     Agilite, MMIT and their representatives or agents to cease, desist, and refrain from tortiously interfering with Plaintiffs' or their affiliates' contractual relationships with Moharil and Jaiswal; and

      iv.     Moharil, Jaiswal, Agilite, MMIT and their representatives or agents to cease, desist, and refrain from tortiously interfering with Plaintiffs' or their affiliates' contractual relationships with their employees.

83. Plaintiffs have suffered an irreparable injury to their business, their reputation within the marketplace, as well as their relationships with employees and customers through Moharil, Jaiswal, Agilite, and MMIT's actions.

84. The issuance of a permanent injunction preventing Defendants from continuing to perform the illegal activity described herein is necessary to prevent substantial and irreparable injury to Plaintiffs and their affiliates.

85. The issuance of these orders and injunctions also minimizes the risk of any further illegal solicitation of Plaintiffs' or their affiliates' employees.

86. Without the injunctive relief requested, Plaintiffs will be left without an adequate remedy at law.

87. Considering the balance of hardship between Plaintiffs and Defendants, an injunction is warranted.

88. Public interest would not be disserved by the issuance of a permanent injunction against Defendants.

89. Defendants should be permanently enjoined from continuing the wrongful conduct described herein.

90. Pursuant to Section 4.4(a) of the Moharil Employment Agreement and Section 32 of the Jaiswal Employment Agreement, Plaintiffs also seek their costs and attorneys' fees incurred in obtaining this injunction.

## JURY DEMAND

91.     Plaintiffs request a jury in this action.

## PRAYER

WHEREFORE, Plaintiffs request judgment against Defendants, jointly and severally, for:

(a)     actual, punitive, and consequential damages;

(b)     lost sales/profits and lost business opportunities;

(c)     attorneys' fees and litigation costs;

(d)     costs of court;

(e)     pre- and post-judgment interest;

(f)     temporary injunctive relief;

(g)     permanent injunctive relief;

(h)     all other relief, at law or in equity, to which Plaintiffs may be entitled.

This the 4th day of March, 2022.

Respectfully submitted,

CONDON TOBIN SLADEK THORNTON NERENBERG PLLC

*/s/ Stephanie K. Osteen*
Stephanie K. Osteen*
Abigail R.S. Campbell*
8080 Park Ln. Suite 700
Dallas, Texas 75231
T: 214-265-3800
sosteen@condontobin.com
acampbell@condontobin.com
* *admitted pro hac vice*

Dingess, Foster, Luciana, Davidson, & Chleboski, LLP

John P. Miller
PA Bar ID 91304

Andrew Giel
PA Bar ID 326240
20 Stanwix St. Third Floor
Pittsburgh, PA 15222
T: 412-926-1821
jmiller@dfllegal.com
agiel@dfllegal.com

***Attorneys for Plaintiffs Eli Research India Private Limited, and Eye Care Leaders***

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing has been e-served to all counsel of record on the 4th day of March, 2022 via ECF system electronic service.

*/s/Stephanie Osteen*

27650150v1 92132.040.35