

# EMPLOYMENT, CONFIDENTIALITY, NON-SOLICITATION AND NON-COMPETITION AGREEMENT

This Employment, Confidentiality, Non-Solicitation and Non-Competition Agreement (this "Agreement") is made and entered into by and between [EYE CARE LEADERS ("Employer") and the Employee (the "Employee").

## RECITALS

A. Employer acknowledges Employee has certain skills, experience, and abilities that may be valuable to the success of the Employer's operations and future profitability;

B. Employer has built goodwill, reputation, and tangible and intangible value by obtaining, using and protecting its Confidential Information (as defined herein);

C. As a material inducement for Employer to employ Employee, Employer requires that Employee agree to hold Confidential Information in confidence and not use or disclose it to any Person, except to perform the employment duties for Employer;

D. In consideration for the access to, and use of, Confidential Information and to protect Employer's goodwill, and as a material inducement for Employer to offer employment to Employee, Employee agrees to the non-competition and non-solicitation provisions set forth herein;

E. Employer desires to employ and retain the services of Employee and the Employee desires to work for and be employed by the Employer; and

F. Employer has offered employment to Employee via the letter attached hereto as Addendum A and fully incorporated herein by reference (the "Offer Letter").

NOW, THEREFORE, in consideration of the foregoing premises and of the mutual covenants, terms and conditions contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

## ARTICLE 1

## EMPLOYMENT TERMS AND CONDITIONS

1.1 Term. Employment shall begin on the date set forth on the Offer Letter as the Start Date / Effective Date and may be terminated, with or without cause, by Employee to Employer upon fourteen (14) days written notice, or, by Employer to Employee on the date

specified on notice to Employee (the "Term of Employment").  In addition, the Term of Employment shall terminate as provided in Article 2.

1.2. Duties and Services.  Employee will be employed at a location determined by Employer, in the position described on the Offer Letter, and will have such duties and perform such services as are assigned or delegated to the Employee by the Employer. Employee understands that job duties and location may change from time to time, without written notice. Employee will devote all of Employee's business time, attention, skill, and energy exclusively to the business of the Employer and will use Employee's best efforts to promote the success of the Employer's business.

1.3 Compensation.  Employee will be paid the base salary and, if applicable, incentives (if and when earned) as set forth in the Offer Letter, according to Employer's customary payroll practices.  Employer shall withhold all applicable federal, state, and local income and other payroll taxes plus all other amounts required by law, court order, or by agreement of Employee.

1.4 Fringe Benefits.  Employer may offer fringe benefits to Employee pursuant to Employer's Company policy, and may modify, amend, or terminate any fringe benefit at any time.

1.5 Benefits.  Employee may participate in employee benefit plans of Employer that may be in effect from time to time and offered to similarly situated employees.  The benefit plans are governed by their own terms and may be amended, modified or terminated at any time.

1.6 Equipment.  To assist in the performance of Employee's job duties, Employer may provide certain equipment to Employee, including, but not limited to, keys, key cards, cell phones, laptop computers, etc. (the "Company Property").  Upon termination of the employment relationship, Employee must return all Company Property within three (3) business days.

1.7 Paid Time Off.  Employee shall be eligible to accrue sick time and vacation time (referred to herein as "Paid Time Off" or "PTO").  Employee accrues PTO time according to Employer's policies.  Unless otherwise required under applicable law, PTO will not be paid upon termination of Employment.

1.8 Definitions.  For purposes of this Agreement, the capitalized terms are defined as follows:

(a) *Affiliate*.  An "Affiliate" of Employer is any individual who is a member, shareholder, partner, owner, executive employee, manager, or officer of Employer or of an entity which is a parent or subsidiary of Employer, or any entity which is owned or controlled by any one or more of the individuals owning or controlling Employer, its parent companies, their parent companies, their subsidiaries or any entity in common

control of any of them. Employee may request a current list of Affiliates, at any time. Employee understands the list of Affiliates may change from time-to-time.

    (b) *Person*. "Person" means an individual or an entity of any type.

  1.9 No Other Agreements. Employee represents Employee is not currently bound by any form of confidentiality, non-disclosure, non-solicitation, or non-competition agreement. If Employee is so bound or may be bound, Employee must immediately provide a copy of any such agreement to Employer and Employer may terminate this employment immediately in Employer's discretion.

## ARTICLE 2

## TERMINATION OF EMPLOYMENT

  2.1 Termination of Employment. In addition to the termination of this at-will employment as provided in Section 1.1, Employee's employment will be terminated under any of the following circumstances:

    (a) Immediately upon the death of Employee;

    (b) Immediately, by written notice by Employer to Employee, upon the election of Employer, for "Cause." "Cause" shall mean: (i) Employee has been convicted of, pled guilty to, or pled no contest to any felony or any misdemeanor involving fraud, theft, dishonesty or embezzlement; (ii) Employee has failed to adequately perform the duties assigned; (iii) Employee has materially breached this Agreement; (iv) Employee misrepresented or concealed a material fact; (v) Employee acted contrary to the interests of Employer in such a way, in the Employer's sole opinion, to negatively affect the image or reputation of Employer; (vi) Employee failed to meet certain targets and objectives set by Employer; (vii) Employee competed with Employer or disclosed or used any Confidential Information not for the purposes set forth in this Agreement; or (viii) Employee failed to follow the directives of Employer.

  2.2 Rights and Obligations Upon Termination. Upon termination, Employee shall deliver all keys, Company Property, Confidential Information, documents and work papers to Employer whether furnished by Employer, an Affiliate or a third party. Employee's duties for Employer shall terminate. Employee shall have no further right or authority to act for Employer.

  2.3 Obligations Following Termination. Employee agrees that after the date of termination Employee shall, at the request of Employer, render all assistance and perform all acts that Employer considers necessary or advisable to transition Employee's work for Employer or in connection with any litigation involving Employer or any director, officer, employee, shareholder, agent, representative, consultant or client of Employer.

2.4     Payment Upon Termination.  If Employee's employment is terminated, Employer shall pay Employee all compensation earned by Employee through the date of termination.

ARTICLE 3

NON-DISCLOSURE COVENANT

3.1     Confidential Information.  "Confidential Information" means any and all of the following: trade secrets concerning the business and affairs of the Employer or its Affiliates; patents, product specifications, data, know-how, formulae, compositions, processes, designs, sketches, photographs, graphs, drawings, samples, inventions and ideas; past, current, and planned research and development; current and planned distribution methods and processes; customer lists, current and anticipated customer requirements, sales or purchasing agreements, incentives, and discounts; products in development, ideas, new or existing information regarding customers and subscribers; advertiser lists and customer business, financial or economic product information; price lists, market studies, and business plans; computer software and programs (including object code, machine code, and source code); database technologies, systems, structures, and architecture (and related formulae, compositions, processes, improvements, internal resource quality and quantities and pricing thereof, wholesalers, non-publicly disclosed marketing programs, cost saving information of techniques, subscribers and advertisers including prospect lists, source lists and databases, rolodexes, bank or credit card information, devices, know-how, inventions, discoveries, concepts, ideas, designs, and methods); information about litigation involving Employer or its Affiliates; any private and/or non-public information and data regarding customer renewal rates or conversion rates, vendor or supplier rates that are offered by Employer to its customer, advertiser or subscribers; market surveys or feedback; technology, whether related to internal operations or external business, such as product delivery; advertising criteria, techniques, and pricing, all financial data or any materials related to the financial performance or health of Employer or any of its products, divisions, or businesses; any other information or commercially sensitive data and information owned by Employer which is not publicly available nor meant to be disclosed to competitors or the public; information concerning the business and affairs of the Employer or its Affiliates (which includes historical financial statements, financial projections and budgets, historical and projected sales, capital spending budgets and plans, the names and backgrounds of executives, officers, employees, and personnel, personnel training techniques and materials, however documented);  the Third Party Information (as defined in Section 3.3(b)); and any information included or a part of the foregoing.  Confidential Information shall not include any information that the Employee demonstrates is generally available to the public other than as a result of a violation of law, violation or breach of any agreement, or violation or breach of any duty owed by any Person, includes, without limitation, Employee.

3.2     Acknowledgment by the Employee.  Employee acknowledges that (a) during the Term of Employment, the Employee will be afforded access to Confidential Information that the Employer has devoted substantial time, effort, and resources to develop and compile; (b) disclosure of such Confidential Information would have an adverse effect on the Employer, its

good will, prospects, and business; (c) Employer would not disclose such information to the Employee, nor employ or continue to employ the Employee without the agreements and covenants set forth in this Article 3; and (d) the provisions of this Article 3 and Article 4 are reasonable and necessary to prevent the improper use or disclosure of Confidential Information.

3.3     Maintaining Confidential Information.  During the Term of Employment and thereafter, Employee agrees and covenants as follows:

(a)     Employee will hold in strictest confidence the Confidential Information and will not disclose it to any Person, except with the specific prior written consent of the Employer or as may be required by court order, law, government agencies or parties with which the Employer deals in the ordinary course of its business, or except as otherwise expressly permitted by the terms of this Agreement.  The Employee will hold the Confidential Information in strictest confidence permanently and without any time limitation.  All Confidential Information including trade secrets of the Employer will be entitled to all of the protections and benefits afforded under applicable laws.  Employee hereby waives any requirement that the Employer submit proof of the economic value of any trade secret or post a bond or other security.  Employee will not remove from the Employer's premises or record (regardless of the media) any Confidential Information of the Employer or its Affiliates, except to the extent such removal or recording is necessary for the performance of the Employee's duties hereunder.  Employee acknowledges and agrees that all Confidential Information, and physical embodiments thereof, whether or not developed by the Employee, are the exclusive property of the Employer or its Affiliates, as the case may be.

(b)     Employee recognizes that Employer and its Affiliates have received and in the future will receive from third parties their confidential or proprietary information, including, for example, customer or advertiser proprietary, confidential and generally private business information which customer has a reasonable expectation that such information would remain confidential and be kept confidential ("Third Party Information") subject to a duty to maintain the confidentiality of such information, hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any Person (except as necessary in carrying out duties consistent with Employer's agreement with such third party) or to use it for the benefit of anyone other than for the Employer or such third party (consistent with the Employer's agreement with such third party) without the express written authorization of the Employer or its Affiliate, as the case may be.  Third Party Information is also Confidential Information.

(c)     Employee agrees that, within three (3) business days of the termination of the Term of Employment, Employee will deliver to the Employer  (and will not possess or deliver to any other Person) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any Confidential

Information, regardless of whether such items are represented in tangible, electronic, digital, magnetic or any other media.

(d) Pursuant to the Defend Trade Secrets Act of 2016, Employee understands that:

Employee may not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret and/or Confidential Information that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document that is filed under seal in a lawsuit or other proceeding.

Further, if Employee files a lawsuit for retaliation against Employer for reporting a suspected violation of law Employee may disclose Employer's trade secrets and/or Confidential Information to Employee's attorney and use the trade secret and/or Confidential Information in the court proceeding if Employee: (a) files any document containing the trade secret and/or Confidential Information under seal; and (b) does not disclose the trade secret and/or Confidential Information, except pursuant to court order.

3.4 <u>Inventions</u>. Employee hereby assigns, transfers, and sets over to Employer all right, title, and interest, including rights in the nature of patent rights, trademark rights, copyrights, trade secrets, or design rights, in and to any and all Inventions (as defined below). This assignment includes without limitation all such rights in the United States of America and throughout the world, and in and to any Letters Patent, applications for Letters Patent, any division, reissue, extension, continuation, or continuation-in-part thereof, or any copyright or trademark registrations which may be granted and issued for such Inventions. The parties intend that Employer shall have sole and exclusive right, title, and interest in such Inventions. Employee agrees to execute and deliver, and cause to be executed and delivered, any and all additional papers, documents, instruments, and other assurances reasonably required to effectively carry out the intent and purposes of this Section 3.4, and shall do any and all acts and things reasonably necessary in connection with the performance of Employee's obligations hereunder, including, but not limited to, those acts reasonably required to accomplish the aforesaid registrations and applications for Letters Patent. Employee represents and warrants to Employer that he is now under no contract or agreement, nor has he previously executed any documents whatsoever, with any other person, firm, association, or corporation that will, in any manner, prevent his giving, and Employer from receiving, the exclusive benefit of his services and of any and all Inventions that may be devised or developed by him or under his direction, in accordance with the terms of this Agreement. As used in this Agreement, the term "<u>Invention</u>" means any and all improvements, inventions, and other creative works of any kind whether or not patented that Employee may make or conceive solely, or that Employee may make or conceive jointly or commonly with others, either during the Term of Employment or within a period of two (2) years following the Term of Employment, relating to: (a) methods, processes, apparatus, or designs concerned with the production of any character of goods, materials, or

services sold or used by Employer or its Affiliates; and/or (b) any character of goods, materials, or services sold or used by Employer or its Affiliates.

3.5 <u>Actions Seeking Confidential Information</u>. In the event a disclosure of Confidential Information is requested or sought by legal process, Employee shall immediately give written notice to the President of Employer. Upon notice of a request for disclosure of Confidential Information, the Employer may bring an action to enforce Employer's rights (or the rights of the third party). Employee shall not release, make public or disseminate such information until (a) the court makes a determination that all or part of the information is or is not Confidential or (b) Employer provides written consent to release the information.

3.6 <u>Disputes or Controversies</u>. Employee recognizes that should a dispute or controversy arising from or relating to this Agreement be submitted for adjudication to any court or other third party, the preservation of the secrecy of Confidential Information may be jeopardized. All pleadings, documents, testimony, and records relating to any such adjudication will be maintained in secrecy and will be available for inspection by the Employer, the Employee, and their respective attorneys and experts, who will agree, in advance and in writing, to receive and maintain all such information in secrecy, except as may be limited by them in writing.

## ARTICLE 4

## NON-COMPETITION, NON-SOLICIATION AND NON-INTERFERENCE

4.1 <u>Acknowledgements Concerning Non-Compete Provisions</u>. Employer and the Employee hereby mutually agree that the Employer's business was built and is based on the Employer's goodwill, public perception, and customer relations. Employer's Confidential Information provides a material competitive advantage to Employer in a highly competitive industry. In consideration for protection of Employer's goodwill, customer relations, reputation, training provided by Employer to Employee, Employer's method of doing business and the grant by Employer of Confidential Information to Employee, which would be inevitably disclosed or used by Employee in a subsequent competitive job, the Employee grants the non-compete and non-solicitation restrictions contained in this Article 4.

4.2 <u>Covenants</u>. In consideration of the terms, conditions and acknowledgments of Employee, the Employee pursuant to this Agreement, the Employee hereby agrees and covenants to each and all of the following:

(a) *Noncompetition*. For the duration of the Term of Employment and for two years thereafter ("<u>Restricted Period</u>"), Employee will not, directly or indirectly, in any capacity whatsoever, individually or on behalf of any other person or entity, engage in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, associated with, or in any manner connected with, lend the Employee's name or any similar name to, lend the Employee's

credit to or render services or advice to, any business engaged or about to become engaged in the Business of the Employer, or any of its Affiliates, in the Market Area. For purposes of this Agreement, the "Business" of the Employer or its Affiliates, includes engaging in any business providing products and services that are presently or hereafter marketed by the Employer, or its Affiliates, or that are in the development stage at any time during the Term; and any other business in which the Employer is engaged in at any time during the Term.

(b)     *Solicitation of Customers*.   For the Restricted Period, the Employee covenants and agrees that Employee will not, either directly or indirectly, solicit any Person that is a customer (defined as any customer who currently has an active account with Employer, who had an active account with Employer within the previous two years prior to the date of termination, or who Employer was soliciting for business within one year prior to the date of termination) of the Employer or its Affiliates for purposes of selling products or services to such Person that are in competition with the products and services offered or sold by the Employer or its Affiliates.

(c)     *Solicitation of Employees*.   For the Restricted Period, the Employee agrees not to employ, either directly or indirectly, any current employee of the Employer or its Affiliates or any individual who was an employee of the Employer or its Affiliates at any time during Term, and agrees not to solicit, or contact in any manner that could reasonably be construed as a solicitation, either directly or through an Affiliate, any employee of the Employer or its Affiliates for the purpose of encouraging such employee to leave or terminate his employment with the Employer or its Affiliates to compete with Employer.

(d)     *Solicitation of Vendors*.   For the Restricted Period, the Employee agrees not to solicit, either directly or through an Affiliate, a current vendor or supplier of the Employer or its Affiliates for purposes of encouraging such vendor or supplier to cease or diminish providing products or services to the Employer or its Affiliates, or to change adversely the terms under which such vendor or supplier provides such products or services to the Employer or its Affiliates.

(e)     *Interference*.   For the Restricted Period, the Employee agrees not to interfere with the relationship between Employer and its Affiliates and any Person who at the relevant time was an employee, contractor, supplier, or customer of the Employer or its Affiliates.

(f)     *Market Area*.   For purposes of this Article 4, the term "Market Area" means the states and provinces in the United States or Canada and Rest of World in which the Employer or its Affiliates have provided goods or services within the twenty four months prior to the termination of employment.

**EMPLOYMENT, CONFIDENTIALITY, NON-SOLICITATION AND NON-COMPETITION AGREEMENT** – Page 8
2132.12

4.3     Scope.  Employee acknowledges and agrees that the Employer is engaged in or intends to be engaged in business throughout the world and that the marketplace for Employer's businesses, products and services of Employer and the Affiliates is currently Global in nature, and thus the geographic area, length and scope of the restrictions contained in Article 4.2 are reasonable and necessary to protect the legitimate business interests of the Employer.  The Restricted Period shall be extended for the amount of any time of any violation thereof and the time, if greater, necessary to enforce such provisions or obtain any relief or damages for such violation through the court system.   If any covenant in Article 4 of this Agreement is held to be unreasonable, arbitrary, or against public policy, such covenant will be considered to be divisible with respect to scope, time, and geographic area, and such lesser scope, time, or geographic area, or all of them, as an arbitrator or a court of competent jurisdiction may determine to be reasonable, not arbitrary, and not against public policy, will be effective, binding, and enforceable against the Employee.  In the event of termination of the Employee's employment with the Employer for any reason, the Employee consents to the Employer communicating with the Employee's new employer, any entity in the Business or through or in connection with which the Employee is restricted hereunder, or any other party about the restrictions and obligations imposed on the Employee under this Agreement.

4.4     Enforcement.

(a)     Employee agrees the covenants and undertakings contained in Article 3 and in Article 4 of this Agreement relate to matters which are of a special unique and extraordinary character and that Employer cannot be reasonably or adequately compensated in damages in an action at law in the event Employee breaches any of the covenants in Article 3 or Article 4. Therefore, Employee agrees that Employer shall be entitled, as a matter of course, without the need to prove irreparable injury, to an injunction, restraining order or other equitable relief from any court of competent jurisdiction, restraining any violation or threatened violation of any of such terms by Employee and such other persons as the court shall order, Employee agrees to pay costs and legal fees incurred by Employer in obtaining such injunction.

(b)     Rights and remedies provided for herein are cumulative and shall be in addition to rights and remedies otherwise available to the parties under any other agreement or applicable law.

(c)     If Employee violates the covenants of Article 3 or Article 4, then Employer may, in addition to any other remedies, cease making payments to Employee of commission or salary.

4.5     Reasonableness.

(a)     The parties hereto agree that the non-competition and non-solicitation covenants by Employee and the covenants and agreements contain herein are reasonable in scope, area, and duration and necessary to protect the reasonable competitive business

interests of Employer, including without limitation, the value of the Confidential Information and goodwill of Employer.

(b) In the event that any provision of this Agreement shall to any extent be held invalid, unreasonable or unenforceable in any circumstances, the parities hereto agree that the remainder of this Agreement and the application of such provision of this Agreement to other circumstances shall be valid and enforceable to the fullest extent permitted by law. The parties hereto recognize that if, in any judicial proceeding, a court shall refuse to enforce any of the separate covenants contained in this Agreement, then that unenforceable covenant contained in this Agreement shall be deemed eliminated from these provisions to the necessary to permit the remaining separate covenants to be enforced.

## ARTICLE 5

## MISCELLANEOUS

5.1 Employee understands and agrees that this Agreement supersedes any and all prior oral or written understandings and agreements between the parties concerning the subject matter contained in this Agreement; provided any other confidentiality agreements signed by Employee shall remain in effect. The parties agree the Employee may enter into a wage deduction agreement and the parties agree the terms of any ERISA governed benefit plan shall be governed by its own terms.

5.2 Employee understands and agrees that if any provision in this Agreement is determined to be in violation of any law, rule, or regulation or otherwise unenforceable, such determination shall not affect the validity of any other provision, restriction, or paragraph of this Agreement, and such other provisions, restrictions, or paragraphs shall remain in full force and effect. Each provision, restriction, or paragraph of this Agreement is severable from every other provision, restriction, or paragraph and constitutes a separate and distinct covenant. In the event that a court of competent jurisdiction determines that any provision of this Agreement is overly broad or unenforceable, Employer and Employee specifically request that the court reform such provision so that it is enforceable to the maximum extent permitted by law.

5.3 Employee understands and agrees that Employer's waiver of a breach of any provision of this Agreement by Employee does not waive any subsequent breach by Employee, nor does Employer's failure to take action against Employee or any other employee for similar breaches operate as a waiver by Employer of a breach.

5.4    Any notice required or permitted to be given hereunder shall be deemed sufficiently given if delivered in person or sent by email, facsimile, overnight mail, or registered or certified postage prepaid, addressed to the addressee at the address last provided the sender in writing by the addressee for purposes of receiving notices hereunder or, unless or until such address shall be so furnished, to the address indicated in the Offer Letter.

5.5    The paragraph and subparagraph headings contained in this Agreement are for reference purposes only and shall not affect the construction or interpretation of this Agreement.

5.6    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same.

5.7    This Agreement may not be altered or amended except in writing, signed by Employee and an authorized representative of Employer.

5.8    The rights of Employer under this Agreement may, without the consent of Employee, be assigned to any parent, subsidiary or affiliate of Employer, or to any person, firm, corporation, or other business entity which at any time, whether by purchase, merger, or otherwise, directly or indirectly, acquires all or material portion of the stock, assets or any line of the Business.  None of the rights of Employee to receive any form of compensation payable pursuant to this Agreement shall be assignable or transferable except through a testamentary disposition or by the laws of descent and distribution upon the death of Employee.  Any attempted assignment, transfer, conveyance, or other disposition (other than as aforesaid) of any interest in the rights of Employee to receive any form of compensation to be made by Employer pursuant to this Agreement shall be void.

5.9    Employee acknowledges that Confidential Information is kept in the State of Texas and such jurisdiction and venue is materially related to this Agreement.  The parties hereto irrevocably and unconditionally submit to the exclusive jurisdiction of any State or Federal court sitting in Dallas, Texas, over any suit, action or proceeding arising out of or relating to this Agreement.  Service of any process, summons, notice or document by either hand delivery, certified or registered mail addressed to any party hereof shall be effective service of process for any action, suit or proceeding brought against such party in any such court.  The parties hereto irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.  A final judgment in any suit, action or proceeding brought in any such court shall be conclusive and binding upon the parties and may be enforced in any other courts to whose jurisdiction a party is or may be subject, by suit upon such judgment.

5.10    This Agreement shall be construed in accordance with, and governed by, the laws of the State of Texas.

Executed as of the Effective Date.

_____  10/11/2017      _____
Employee's Signature                             Employer's Representative

**ADDENDUM A
TO
EMPLOYMENT, CONFIDENTIALITY, NON-SOLICITATION AND NON-
COMPETITION AGREEMENT**