IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ECL GROUP, LLC d/b/a EYE CARE LEADERS and ELI RESEARCH INDIA PRIVATE, LIMITED, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | No: 2:22-cv-00057-MPK |
| SOURABH MOHARIL, ABHAY JAISWAL, AGILITE GLOBAL SOLUTIONS COMPANY, LLC and MANAGED MARKETS INSIGHT AND TECHNOLOGY, LLC, | : : : : : : | |
| Defendants. | | |

**PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Plaintiffs ECL Group, LLC d/b/a Eye Care Leaders and Eli Research India Private, Limited ("Plaintiffs"), and Defendants, Sourabh Moharil, Abhay Jaiswal, Agilite Global Solutions Company, LLC and Managed Markets Insight and Technology, LLC (together, the "Parties") submit the following protocol (the "Protocol") for the discovery of electronically-stored information ("ESI").

**A.    GENERAL PRINCIPLES**

1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner.  The failure of counsel for the Parties to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.    The proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C) should be applied in each case when formulating a discovery plan.  To further the application of the

proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable.

**B.  PRESERVATION OF ESI**

A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in their possession, custody, or control.  With respect to ESI, the following provisions apply:

3.  Absent a showing of good cause by the requesting party, the Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.  The Parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under (C)(2) or (D)(1)-(2) below).

4.  Absent a showing of good cause by the requesting party, the following categories of ESI need <u>not</u> be preserved:

   a. Deleted, slack, fragmented, or other data only accessible by forensics.

   b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   c. Online access data such as temporary internet files, histories, caches, cookies, and the like.

   d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

   e. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

   f. Server, system, or network logs.

    g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

    h. Electronic data (e.g., email, calendars, contact data, notes, and text messages) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), *provided* that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

The parties agree to confer regarding any other category of ESI that may not need to be preserved, in light of the General Principles set forth above, and determine whether the parties can agree that such categories can be added to the non-preservation list in (B)(4) above.

    **C.**     **ADDRESSING PRIVILEGE DESIGNATIONS**

The parties agree to produce privilege logs in Excel format (or a similar electronic format that allows text searching and organizing of data). Privilege logs will be produced within thirty (30) days of each document production, unless the parties reach a separate, written agreement on privilege logs. The privilege logs shall contain the following information:

    a. Document ID or other numeric identifier for unproduced documents; Beg Bates number for documents produced as slip sheets or with redactions;

    b. Redacted/Withheld;

    c. Type of document;

    d. Identification of the number of attachments (if any);

    e. Date;

    f. Author/Senders;

    g. All identified recipients/copyees; and

    h. In accordance with Federal Rule of Civil Procedure 26(b)(5), a description of the nature of the document, communication, or tangible thing not produced or disclosed, in a manner that – without revealing information itself privileged or protected – will enable opposing counsel to assess the claim of the privilege.

103488274.1
27726823v1 92132.040.35

5. With respect to attorney-client privileged or work product information generated after the filing of the Complaint, the Parties are not required to include any such information in privilege logs.

6. If a document is privileged only in part, the document shall be produced with only the privileged portion(s) redacted. Each redacted portion shall be clearly marked as redacted in the location(s) of the document where it is redacted. Any redacted portion(s) shall be listed in the privilege log in accordance with this section.

7. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

### D. OTHER ESI PROTOCOLS

8. <u>On-site Inspection of Electronic Media</u>.  Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the Parties.

9. <u>Search Methodology</u>.  The use of search terms will be reasonably necessary to locate ESI likely to contain discoverable information.  The Parties shall reach an agreement on appropriate search terms before any query is performed.

   a. The parties shall work together to reach an agreement regarding search terms or queries.  Focused terms and queries, rather than overbroad ones (e.g., product and company names), shall be employed.

   b. For purposes of this Protocol, and absent a showing of good cause, search terms returning more than 10,000 hits are presumed to be overbroad.  Should the agreed-upon search terms generate more the 10,000 hits, the parties may agree to use a technology assisted review.

   c. That a document is captured by the application of any agreed search terms does not mean that the document is necessarily subject to production in response to any discovery request or otherwise relevant to the claims or defenses of the parties. The parties also may use manual review or propose the use of other reasonable technology-assisted review tools or algorithms to further identify items for responsive review.

    d. The parties reserve all rights to request additional documents, before the close of discovery but after production of documents has begun, if it is discovered that relevant documents were not picked up by the agreed-upon search terms or otherwise not produced.

10. <u>Format</u>.  The Parties shall confer and agree on the format in which they produce ESI and non-ESI.

    a. It is presumed that ESI shall be produced to the requesting party with searchable text, in a format to be decided between the parties (e.g., TIFF with a companion text file). The producing party will produce searchable optical character recognition ("OCR") text of scanned paper documents. The producing party will produce extracted text from the native file. Extracted text or OCR text will be produced on a document level as .TXT files, with the .TXT filename matching the Bates number applied to the first page of the corresponding static image file followed by the .TXT extension.

    b. Text files are to be located in a folder named "TEXT" or "OCR' containing text files only.

    c. Each document image file must be named with a unique Bates Number following by the extension "TIF" or "PDF".

    d. File names should not be more than 20 characters long or contain spaces.

    e. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e, the original formatting, the metadata (as noted below), and, where applicable, the revision history.

    f. The parties shall produce their information in the following format: single page color images (Group 4 Tagged Image File Format files at 300 x 300 dpi

  resolution, type-2 (24 bit), or .pdf files, standard format) and associated multi-page text files containing extracted text and with appropriate software load files containing all requisite information for use with a document management system.

g. Two load/unitization files shall be provided with all productions: (i) **Metadata Import File**: DAT format, ASCII format, using Concordance default delimiters to separate the fields and records. A path to the corresponding .TXT file should be included as a filed in the metadata import file; (ii) **Image Cross-Reference File**: OPT format, containing the corresponding image information and indicating page breaks.

h. To the extent a party or parties want to produce certain documents in black and white, the parties agree to meet and confer and come to agreement prior to production of any black and white images.

i. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. Each party reserves the right to request reproduction of the load files where improper unitization is excessive.

j. Electronic image files should be located in a folder named "IMAGE" or "DOCS' containing static images only. All electronic image file names should match the Bates number assigned to the image.

k. When processing ESI for production as an electronic image, the producing party must set imaging settings to force off "Auto Date" and force on: hidden columns or rows, hidden worksheets, speaker notes, track changes, and comments.

11. <u>Native Files</u>.  Unless otherwise agreed by the parties, the only files that should be produced in native format are files not easily converted to image or pdf format, such as Excel files, Access files, and drawing files.  Excel files or other files that cannot be imaged properly or efficiently shall be produced natively, except if redacted. Name each native file with the Bates number labeled on the first page of each corresponding document and the appropriate file extension. Native files should be located in a folder named "NATIVE" or "NATIVES" containing native files only. Further, all imaged electronic documents shall contain all information contained in the native, electronic version including, but not limited to, comments and tracked changes (subject to claims of attorney-client, work product, and/or any other applicable privilege or protection).

12. <u>Metadata Fields</u>. Each Party shall produce the following metadata, or equivalent fields, associated with ESI (including all metadata associated with the native versions of imaged electronic documents that were not produced in native format, such as emails produced as PDFs) to the extent reasonably possible and/or accessible:  (a) the author(s) of the ESI; (b) the recipient(s) of the ESI; (c) the date the ESI was created; (d) the source from which the ESI was produced, and (e) the metadata fields listed in the chart below (metadata field names may vary – the chart below describes the metadata fields, or equivalent fields, to be produced, to the extent possible, in generic, commonly used terms that the producing party may adapt to the specific types of documents it is producing):

| Field | Definition |
|---|---|
| CUSTODIAN | Name of person from whose files the document is produced.<br><br>For non-custodial documents, the name of the corporate entity in possession of the documents. |
| DUPLICATE CUSTODIAN | Additional custodians for any duplicate documents |

| | |
|---|---|
| BEGBATES | Beginning Bates Number |
| ENDBATES | End Bates Number |
| BEGATTACH | First Bates number of family range (i.e., Bates number of the first page of the attachment) |
| ENDATTACH | Last Bates number of family range (i.e., Bates number of the last page of the attachment) |
| ATTACHCOUNT | Number of attachments to an email |
| FILESIZE | File size |
| FILETYPE/APPLICATION | Application used to create document |
| FILEEXT | File extension of the native file (e.g., XLS, DOC, PDF) |
| FILEPATH | File source path for all electronically collected documents, which includes location, folder name |
| FILENAME | File name of the original electronically collected documents |
| RECORDTYPE | Descriptive field created by the vendor processing software (e.g., email, edoc, image, attachment) |
| HASHVALUE | MD5 Hash or SHA Value created during processing |
| MAILSTORE | Original path of mail store |
| MSGID | Hash Value created by mail application and contained in native file |
| CONVERSATION_INDEX | Email thread identifier |
| FROM | Sender of Email |
| TO | Recipient of Email |
| CC | Additional recipients of Email |
| BCC | Additional recipients of Email |
| SUBJECT | Subject line of email |
| SENSITIVITY | Sensitivity field extracted from native email message or other Outlook item |
| PARENT_DATE (mm/dd/yyyy) | Date of the document or, for attachments, its parent |
| PARENT_TIME | Time of the document or, for attachments, its parent |
| DATESENT (mm/dd/yyyy) | Date sent |
| TIMESENT | Time sent |
| DATERCVD (mm/dd/yyyy) | Date received |
| TIMERCVD | Time received |
| TITLE | Title field value extracted from the metadata of the native file |
| AUTHOR | Creator of document |
| DATECRTD (mm/dd/yyyy) | Creation date |
| TIMCRTD | Creation time |
| LASTAUTHOR | Last saved field contained in the metadata of the native file |

| | |
|---|---|
| LASTMOD (mm/dd/yyyy) | Last modified date |
| LASTMODT | Last modified time |
| REDACTED | "Yes" when the document contains redactions. Blank or "No" when there are no redactions. |
| TIME ZONE | A description of the time zone in which the document was processed such as "Pacific Standard Time (PST)" |
| NATIVEFILELINK | For documents provided in native format only |
| TEXTPATH | File path for OCR or Extracted Text files |
| PROD_VOL | Name of the production volume that includes the party's Bates prefix and the production volume number ("MAT PROD001") |

13.     The "source" of ESI shall be the name of the person who was the custodian of the ESI or, if the name of a person is not available, the storage location (e.g., "Regulatory Shared Drive–Wayne, PA," "iCloud," or "Google Dive").  This information, to the extent possible, will be included in the "Author," "Recipient," "Date," and "Source" fields (respectively) for each document in the Concordance or Summation load file associated with the .TIF images. The parties shall meet and confer regarding the number and type of metadata fields to be produced.

14.     Costs.  Generally, the costs of discovery shall be borne by each party.  The Court will, however, apportion the costs of discovery among the Parties, including discovery of ESI that is not reasonably accessible, upon a showing of unequal burdens, unreasonable requests, or other good cause.

15.     Personal Identifying Information: To expedite and reduce the costs associated with the production of documents, the parties agree they need not redact personal identifying information from the party document productions. Pursuant to state and federal law, prior to using any document produced by any party or third party containing any personal identifying information for any reason, including at a deposition, at any proceeding, in court, or prior to

103488274.1
27726823v1 92132.040.35

publicly filing the document, the party intending to use the document will redact all personal identifying information. Personal identifying information includes, but is not limited to, social security numbers, bank account numbers (for both individuals and businesses), credit card numbers (for both individuals and businesses), passport numbers, or driver's license numbers.

16. <u>Parent-Child Relationships</u>: Reasonable efforts shall be made to preserve parent-child relationships and those relationships must be preserved in such a way that a document and any attachments to that document are produced in the same production set and the relationships are identifiable. Embedded images and/or text files extracted from email signatures, such as company logos and URLs, may be excluded from production.

17. <u>Duplicates</u>: A producing party will produce a single copy of any document where the party's custodian(s) has more than one identical copy of a document based on (1) MD5 or SHA-1 hash values at the document level; or (2) for correspondence file types that are not email types, a near duplicate value or text similarity of 100%; or (3) for any email file types, any lesser included or embedded emails already within a top-level or last-in-time produced email thread or chain as determined by conversation index; or (4) any other commercially available deduplication software or algorithm that the parties mutually agree to utilize.

De-duplication will be done across the entire collection (global de-duplication). Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the Parent/Family level. Attachments should not be eliminated as duplicates for purposes of production unless the parent email and attachments are also duplicates. The parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.

Removal of near-duplicate documents and email thread suppression is not acceptable. Where an identical document is possessed by multiple custodians of a party and the party produces a single copy of that document, the party shall also produce the metadata identifying all custodians who possessed an identical copy of that document in the "DUPLICATE_CUSTODIAN" field in the production load file.

18. <u>Hard Copy Documents</u>.  If the Parties elect to produce hard copy documents in an electronic format, the production of hard copy documents shall include a cross-reference file that indicates document breaks and sets forth the document management system associated with each produced document.  Hard copy documents shall be scanned using a text recognition technology and text-searchable files shall be produced (ASCII). The following metadata shall be produced for hard copy documents (metadata field names may vary – the chart below describes the metadata fields to be produced in generic, commonly used terms that the producing party should adapt to the specific types of documents it is producing):

| Field | Definition |
|---|---|
| CUSTODIAN | Name of person from whose files the document is produced.<br><br>For non-custodial documents, the name of the corporate entity in possession of the documents. |
| BEGBATES | Beginning Bates Number |
| ENDBATES | End Bates Number |
| BEGATTACH | First Bates number of family range (i.e., Bates number of the first page of the attachment) |
| ENDATTACH | Last Bates number of family range (i.e., Bates number of the last page of the attachment) |
| FOLDER | List any file folder information or other identifier associated with organization of the document by custodian |
| BOX | If stored or collected in boxes, list Box number/ID |

Dated: June 3, 2022

*/s/ Stephanie K. Osteen*
Stephanie K. Osteen, Esq.
CONDON TOBIN SLADEK THORNTON NERENBERG PLLC
8080 Park Lane, Suite 700
Dallas, TX  75231
214-265-3800

and

John P. Miller, Esq.
Andrew P. Giel, Esq.
Dingess, Foster, Luciana
Davidson & Chleboski LLP
20 Stanwix Street, Third Floor
Pittsburgh, PA  15222
412-926-1800

Counsel for:
ECL Group, LLC d/b/a Eye Care Leaders and Eli Research India Private Limited

*/s/ Louis A. DePaul (w/ consent)*
Louis A. DePaul, Esq.
ECKERT SEAMANS CHERIN & MELLOTT, LLP
U.S. Steel Tower, 44th Floor
600 Grant Street
Pittsburgh, PA  15219
412-566-6000

Counsel for:
Agilite Global Solutions Company, LLC
Sourabh Moharil
Abhay Jaiswal


*/s/ Andrew E. Russell*
John W. Shaw, Esq.
Andrew E. Russell, Esq.
Nathan R. Hoeschen, Esq.
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
302-298-0700

Counsel for:
Managed Markets Insight and Technology, LLC

12

103488274.1
27726823v1 92132.040.35